UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
LEROY GARCIA,

                                Plaintiff,

- against -

WESTCHESTER COUNTY, CORRECTIONAL
OFFICER CARASQUILLO, and
COMMISSIONER JOSEPH K. SPANO,

                                Defendants.
---------------------------------------------------------------x

**OPINION & ORDER**

No. 19-CV-2167 (CS)

Appearances:

Leroy Garcia
Pine City, New York
*Pro Se Plaintiff*

Jane Hogan Felix
Westchester County Attorney's Office
White Plains, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court is Defendant Carasquillo's motion for summary judgment. (Doc. 48.) For the following reasons, the motion is GRANTED.

## I.    BACKGROUND

### A.    Facts

      Plaintiff Leroy Garcia was incarcerated at the Westchester County Jail in Valhalla, New York (the "jail") on February 23, 2018 when he was attacked by another inmate, Alan Copeland, in the Old Jail Clinic (the "clinic"). (Doc. 49-4 ("Garcia Dep.") at 14:2-15:2.) The Westchester County Department of Correction ("DOC") maintains a daily "keep separate list" to ensure that certain inmates do not come into contact with one another. (Doc. 49-2 ¶ 10.) Plaintiff and

Copeland were on this list at the request of the District Attorney's Office because they were co-defendants in a fifty-count murder indictment and the prosecution did not want them to discuss the case or influence one another's testimony. (Garcia Dep. at 11:4-11, 15:19-16:9, 25:20-26:15.) The jail's "Special Precaution Forms" documenting the "keep separate" orders contain checkboxes listing potential reasons for the orders, and they categorize Copeland and Plaintiff as "known enemies." (Doc. 49-7 at 6-14.)[1] The term "known enemies" is "a generic term used by the [DOC] to refer to inmates whose names appear . . . on a 'keep separate list' and does not necessarily indicate a history of violence or the threat of violence between the inmates." (*Id.* at 3.)

Defendant Carrasquillo was assigned to the clinic post on February 23, 2018 on the 7:00 a.m. to 3:00 p.m. shift along with non-party Officer Ryan Foley. (Doc. 49-5 at 2-3; Doc. 49-6 at 2-3.) It is custom and practice for the officers on duty to review the daily keep-separate list at the beginning of each shift, and both Carrasquillo and Foley believe that they did so. (Doc. 49-5 at 2-3; Doc. 49-6 at 2-3.)

Plaintiff was called to the clinic for treatment for his eye, and when he arrived in the clinic both Carrasquillo and Foley were present. (Garcia Dep. at 16:5-17:7.) Copeland was also there for treatment due to shortness of breath. (*Id*. at 16:17-18; Doc. 49-5 at 3; Doc. 49-6 at 3.) Plaintiff checked in with Carrasquillo at the desk, and neither Plaintiff nor Copeland reminded Carrasquillo that they were supposed to be kept separate. (Garcia Dep. at 24:19-25:8; Doc. 49-5 at 3; Doc. 49-6 at 3.) After checking in, Plaintiff began speaking with Copeland. (Garcia Dep. at 25:4-5, 27:7-8, 33:11-16; 50-51; Doc. 49-5 at 3; Doc. 49-6 at 3.) Copeland wanted Plaintiff to

---

[1] Citations to page numbers in Docs. 49-5, 49-6, and 49-7 refer to the page numbers generated by the Court's Electronic Filing System.

exonerate him of the pending charges and tell the district attorney and judge in their case that Copeland had played no role in the crimes, but Plaintiff refused. (Garcia Dep. at 26:3-4, 26:16-19, 33:11-34:7.)

The tone of this conversation was normal and there was no yelling or raised voices. (Garcia Dep. at 34:20-35:7; Doc. 49-5 at 3; Doc. 49-6 at 3.) Officer Foley then told Copeland he was free to return to his housing block. (Doc. 49-5 at 3; Doc. 49-6 at 3.) When Copeland got up to leave, he "attacked" Plaintiff "out of nowhere." (Garcia Dep. at 35:17-21; *see* Doc. 49-5 at 3; Doc. 49-6 at 3.) Plaintiff hit Copeland back and the two continued to exchange punches and wrestled on the ground. (Garcia Dep. at 35:24-36:21.) The officers called in an emergency code and Sergeant Debra Howard responded. (Doc. 49-5 at 3; Doc. 49-6 at 3.) Plaintiff and Copeland disregarded orders to cease fighting, Sergeant Howard pepper-sprayed them, and an emergency response team ultimately handcuffed them. (Garcia Dep. at 38:9-40:7; Doc. 49-5 at 3; Doc. 49-6 at 3.)

### B. Procedural History

Plaintiff filed his Complaint on March 8, 2019, suing Carrasquillo for failing to protect Plaintiff from Copeland, and suing Westchester County and DOC Commissioner Spano for failing to properly train and supervise Carrasquillo. (Doc. 2.) At a pre-motion conference on May 15, 2019, I granted Plaintiff leave to amend and set a briefing schedule for Defendants' anticipated motion to dismiss. (Minute Entry dated May 15, 2019.) On May 28, Plaintiff filed his Amended Complaint, bringing (1) a 42 U.S.C. § 1983 claim against Officer Carrasquillo for failure to protect, (2) a supervisory liability claim against Spano, and (3) a claim against Westchester County for municipal liability under *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978). (Doc. 11.)

Defendants moved to dismiss the Amended Complaint on July 12, 2019, and on January 15, 2020, I granted their motion in part and denied it in part. Plaintiff's failure-to-protect claim against Carrasquillo survived the motion, but I dismissed Plaintiff's claims against Spano and Westchester County. (Minute Entry dated Jan. 15, 2020.) On February 3, Plaintiff sent a letter to the Court requesting to add Foley as a defendant in the failure-to-protect claim, (Doc. 35), and although I granted him leave to amend to do so, (Doc. 37), he never did.

On July 8, 2020, Defendant submitted a pre-motion letter seeking leave to file this summary judgment motion. (Doc. 45.) The Court held a pre-motion conference on July 30, at which I explained the summary judgment standard by which I would evaluate this motion and advised Plaintiff of his obligation to submit evidence in opposition. (Minute Entry dated July 30, 2020.) Defendant submitted the motion along with his memorandum of law, (Doc. 49-1 ("D's Mem.")), Local Rule 56.1 Statement, (Doc. 49-2), and supporting documents on August 19. Plaintiff did not file a Responsive Local Rule 56.1 Statement or any other documents or evidence. He did submit a one-page letter to the Court on September 23, which I construe as a response memorandum. (Doc. 50.) I will consider it as evidence to the extent it contains factual assertions on personal knowledge, even though it is unsworn. *See, e.g.*, *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 530 (S.D.N.Y. 2015); *Riehl v. Martin*, No. 13-CV-439, 2014 WL 1289601, at *6 (N.D.N.Y. Mar. 31, 2014).[2] Defendant then submitted his reply memorandum on October 13. (Doc. 51.)

---

[2] The Court will send to Plaintiff copies of all unpublished decisions cited in this Opinion and Order.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . .

admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1).  Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated."  *Id.* 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).  If "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e).

In addition, *pro se* litigants must be afforded "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), "particularly where motions for summary judgment are concerned," *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014).

Lastly, even though Plaintiff's submission did not contest the facts set forth above, I have thoroughly examined the record to determine whether any material issues of fact remain for trial.  *See Buckley v. County of Suffolk*, No. 10-CV-1110, 2013 WL 122972, at *1 (E.D.N.Y. Jan. 9, 2013).  Even where the opposing party fails to submit evidence disputing the moving party's factual presentation, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (internal quotation marks omitted).

### III.  DISCUSSION

Defendant argues that he is entitled to summary judgment on Plaintiff's failure-to-protect claim because there is no evidence that he was deliberately indifferent to Plaintiff's safety, and

that Plaintiff's state law claims (newly raised in Plaintiff's response memorandum) fail as a matter of law because never filed a notice of claim.  (*See* D's Mem. at 3-6.)

### A. <u>Failure to Protect</u>

Because Plaintiff was a pretrial detainee at the time of the altercation, I analyze his failure-to-protect claim under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  The Due Process Clause imposes on jail officials "a duty to . . . protect prisoners from violence at the hands of other prisoners."  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks omitted).  A prison official violates this requirement when (1) the inmate is incarcerated "under conditions posing a substantial risk of serious harm"; and (2) the prison official showed "deliberate indifference to inmate health or safety."  *Id.* at 834 (internal quotation marks omitted).  "[A] prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm."  *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996).  "[M]ere negligence will not suffice."  *Id.*; *accord Rembert v. Cheverko*, No. 12-CV-9196, 2014 WL 3384629, at *5 (S.D.N.Y. July 10, 2014).

First, a plaintiff must "show that he is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, through evidence of either "a previous altercation between a plaintiff and an attacker, coupled with a complaint by plaintiff regarding the altercation or a request by plaintiff to be separated from the attacker," *Gilmore v. Rivera,* No. 13-CV-6955, 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014), or "a more general risk of harm due to the conditions at the time of the attack," *Hurst v. Perez*, No. 15-CV-4703, 2017 WL 187532, at *2 (S.D.N.Y. Jan. 13, 2017), such as where "a substantial risk of inmate attacks was

7

longstanding, pervasive, [or] well-documented," *Farmer*, 511 U.S. at 842.  Plaintiff has not produced evidence of either.

The record contains no indication of a substantial risk of harm to Plaintiff from Copeland.  There is no evidence of animosity between them, and Plaintiff admitted in his deposition that he did not fear Copeland, that he voluntarily conversed with him, and that the attack came "out of nowhere."  (Garcia Dep. at 25:13-16, 35:17-21.)  While courts will look to the existence of no-contact orders (or lack thereof) to determine whether a substantial risk of harm existed, *see Mays v. Falu*, No. 18-CV-6145, 2019 WL 6619330, at *8 (S.D.N.Y. Dec. 5, 2019), Defendant has presented uncontested evidence – from Plaintiff's own deposition – that the keep-separate placement was not to prevent violence between Plaintiff and Copeland, but to keep them from influencing each other's potential testimony in their criminal case.  (Garcia Dep. at 11:4-11, 15:19-16:9, 25:20-26:15.)  And although the keep-separate lists do categorize Plaintiff and Copeland as "known enemies," (Doc. 49-7 at 6-14), Defendant has produced an uncontested affidavit stating that this is a "generic" or catch-all term used by the DOC and "does not necessarily indicate a history of violence or the threat of violence between the inmates," (*id.* at 3).[3]  As such, Plaintiff cannot show that, before the assault, he objectively faced a substantial risk of serious harm from being in the same room with Copeland.  *See James v. Orange Cnty. Corr. Facility*, No. 09-CV-7226, 2011 WL 5834855, at *6 (S.D.N.Y. Nov. 18, 2011) (dismissing

---

[3] The Special Precaution Form has checkboxes allowing the officer to state a reason for the separation, such as "escape/escape attempt," "assaultive toward staff/inmates," and "known enemies."  (*E.g.*, Doc. 49-7 at 11.)  As one of the choices is "other," (*id.*), one could argue that it makes no sense to check "known enemies" when the inmates at issue are not known enemies.  But this mere scintilla of evidence does not suffice to create a fact issue, considering the undisputed testimony that that checkbox does not necessarily mean there is a history of violence and, more importantly, Plaintiff's testimony that there was in fact no such history and no other previous conflict between him and Copeland.

Case 7:19-cv-02167-CS   Document 57   Filed 02/22/21   Page 9 of 11

failure-to-protect claim where there was "no evidence of any history of animosity sufficient to establish a risk of serious harm prior to Plaintiff being assaulted"); *see also Delaney v. Westchester Cnty. Dep't of Corr.*, No. 19-CV-3524, 2021 WL 243066, at *2 (S.D.N.Y. Jan. 25, 2021) ("When determining whether the risk of an inmate's violence against other inmates is sufficiently serious to trigger constitutional protection, the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a substantial risk of serious harm.") (internal quotation marks and alteration omitted).

Second, "a 'pretrial detainee must prove that the defendant-official acted intentionally . . . or recklessly failed to act with reasonable care to mitigate the risk [of harm] . . . even though the defendant-official knew, or should have known,' of the risk." *Grant v. Hogue*, No. 17-CV-3609, 2019 WL 3066378, at *5-6 (S.D.N.Y. July 12, 2019) (alterations in original) (quoting *Darnell*, 849 F.3d at 30). "Thus, unlike the Eighth Amendment, the Fourteenth Amendment 'can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm.'" *Id.* (quoting *Darnell*, 849 F.3d at 30). In general, a defendant must have known of a prior altercation between the individuals in question or of specific threats that had been made against the plaintiff. *Thomas v. Demeo*, No. 15-CV-9559, 2017 WL 3726759, at *8 (S.D.N.Y. Aug. 28, 2017). In the absence of such evidence, "prison officials are not liable for any harm caused by inmate-on-inmate violence." *Id.* On this record, no reasonable jury could find that Defendant knew of and disregarded a particular risk to Plaintiff's safety because there is no evidence of prior animosity or violence between Plaintiff and Copeland.[4]

---

[4] Plaintiff contends that he was harmed "[d]ue to Officer Carasquillo['s] negligence" and failure to take "reasonable care," (Doc. 50 at 1), but "[a] detainee must demonstrate that the

9

Accordingly, Plaintiff has failed to show a genuine issue of material fact for trial on his claim of deliberate indifference to the conditions of his confinement arising from the failure to protect Plaintiff from Copeland's alleged assault, and therefore Defendant's motion for summary judgment is granted as to the constitutional claim against him.

**B.     State Law Claims**

While not mentioned in either of his complaints, Plaintiff argues in opposition that Carrasquillo is also liable for his injuries under New York tort law.  (Doc. 50.)  "It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment." *Brandon v. City of N.Y.*, 705 F.Supp.2d 261, 278 (S.D.N.Y. 2010); *see Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (summary order).  "While this tenet is generally applied to parties represented by counsel, . . . even . . . a *pro se* litigant . . . [cannot] assert new claims at this late stage."  *Wright v. Jewish Child Care Ass'n of N.Y.*, 68 F.Supp.3d 520, 529 (S.D.N.Y. 2014); *see Oyewo v. Lahood*, 515 F. App'x 10, 11 (2d Cir. 2013) (summary order) (*pro se* plaintiff abandoned claim by raising it for first time in opposition to summary judgment).

Even if a state law tort claim had been raised in Plaintiff's complaints, it would be dismissed under New York General Municipal Law § 50-i, which mandates that

> no tort action shall be prosecuted or maintained against a [county] or any of its officers, agents, or employees unless:  (1) a Notice of Claim has been served against the [county]; (2) the [county] has refused adjustment or payment of the claim; and (3) the action is commenced within one year and ninety days after the event upon which the claim is based occurred.

*Dingle v. City of N.Y.*, 728 F.Supp.2d 332, 348 (S.D.N.Y. 2010) (citing N.Y. Gen. Mun. Law § 50-i).  Because Defendant is employed by the DOC, (Doc. 49-5 at 2), any state law personal

---

prison official acted purposefully or with an objectively reckless disregard of the risk to the inmate; mere negligence is insufficient."  *House v. City of N.Y.*, No. 18-CV-6693, 2020 WL 6891830, at *14 (S.D.N.Y. Nov. 24, 2020).

injury claim against him would be subject to the Notice of Claim requirement. *Dingle*, 728 F.Supp.2d at 348 ("The requirements do apply to state law personal injury claims that are brought in federal court."). And as Defendant has represented that Plaintiff has not filed such a notice, (D's Mem. at 5), and Plaintiff has presented no evidence to the contrary, any state law claims must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 48), enter judgment for Defendants, close the case (all other claims having been dismissed), and send a copy of this Opinion and Order to Plaintiff.

**SO ORDERED.**

Dated: February 22, 2021
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.